Ethel I. Buckley v. Commissioner. Helen Hunter Davis v. Commissioner. Clare E. Good v. Commissioner. Lloyd A. Good v. Commissioner. Mary P. McDaniel v. Commissioner. Ernest B. Loveman v. Commissioner. John S. Thomas, Jr. v. Commissioner. Jean S. Heinritz v. Commissioner. Ethel S. Carpenter v. Commissioner. Lloyd A. Good, Jr. Trust v. Commissioner. Jane McLaughlin Timmons v. Commissioner.
Buckley v. Commissioner
Docket Nos. 2300, 2301, 2306, 2307, 2308, 2314, 2325, 2326, 2327, 2334, 2938.
United States Tax Court
1945 Tax Ct. Memo LEXIS 213; 4 T.C.M. (CCH) 460; T.C.M. (RIA) 45152; May 1, 1945
Bruce Low, Esq., Charles C. Norris, Jr., Esq., and Matthew F. Dorsey, Esq., for the petitioners. William D. Harris, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings dispute respondent's determinations of deficiencies in Federal income tax for the year 1940 of the respective petitioners, as follows: Docket
No.
Taxpayer
Deficiency
2300
Ethel I. Buckley
$ 5,879.35
2301
Helen Hunter Davis
171,302.46
2306
Clare E. Good
502.41
2307
Lloyd A. Good
19,184.21
2308
Mary P. McDaniel
2,237.48
2314
Ernest B. Loveman
951.10
2325
John S. Thomas, Jr.
8,212.12
2326
Jean S. Heinritz
200.04
2327
Ethel S. Carpenter
374.13
2334
Lloyd A. Good, Jr., Trust
176.63
2938
Jane McLaughlin Timmons
2,262.16
*214 In Docket Nos. 2300, 2301, 2307, 2308, 2314, 2325, 2327, and 2938, the primary question presented is whether a transaction between a corporation and its shareholders, pursuant to an offer of the corporation to acquire its own stock, constituted a sale resulting in a long-term capital gain or a redemption of the stock in partial liquidation, taxable as a short-term capital gain under section 115(c) and (i) of the Internal Revenue Code. In Docket Nos. 2306, 2307, 2326, and 2334, the same ultimate question is presented, with the variation that these petitioners made tender of their shares after the stated expiration date of the offer made by the corporation to purchase the shares. A companion case to the ones here presented is Rose M. Everett, Docket No. 2313, also decided this day. A master stipulation of facts was submitted for all of the docket numbers involved, supplemented by further stipulations of facts for the respective individual petitioners. In addition there was evidence adduced at the hearing. Those facts hereinafter set forth which are not from the stipulations are facts otherwise found from the record. Findings of Fact All of the stipulated facts are hereby *215 found accordingly. Petitioners are all residents of Philadelphia, Pennsylvania, and vicinity, who timely filed their income tax returns for 1940 with the collector of internal revenue for the first district of Pennsylvania. On or about June 2, 1932, Edward Davis, the husband of Helen Hunter Davis, by gift transferred to her 3,616 shares of the $5 preference stock of the Philadelphia Storage Battery Company, a Pennsylvania corporation, which he was entitled to receive as a stock dividend. The name of Philadelphia Storage Battery was later changed to Philco Corporation, either of which is sometimes referred to as the corporation. Edward Davis had retired in about 1930, but prior to that time had been president of the corporation. After retirement he had sold his common stock in the corporation. Petitioner Helen Davis continued to hold her preference stock until it was transferred to the corporation as hereinafter related. Helen Davis and her husband consulted their son-in-law. Charles Rowley, a trustee of the Massachusetts Investors Trust of Boston and a financier of experience, concerning their investments, and looked to him for advice concerning their security holdings. While *216 Helen Davis and her husband were having dinner with Rowley on September 27, 1939, Rowley advised them that he had felt for some time that Helen Davis' holdings in the $5 preference stock of the corporation represented too large a portion of their joint holdings in a single security. Since the stock was not listed on any exchange and there was no established market for it, Helen Davis authorized Rowley to take such steps as he deemed necessary to dispose of all or a substantial portion of the stock which he believed at that time to consist of a total of 3,000 shares instead of the 3,616 shares actually held. Under date of September 28, 1939, Rowley, on behalf of Helen Davis, wrote Charles Norris of Philadelphia whom he personally knew and who he knew had represented the corporation for a number of years, inquiring if there were any restrictions on the sale of this stock, believing that the stock might first have to be offered to the corporation. Norris, under date of September 29, 1939, replied that there were no restrictions upon the stock and suggested that Rowley write directly to James T. Buckley, president of the corporation. He further expressed the view that the only market *217 for the stock would be among the officers of the corporation. Under date of October 2, 1939, Rowley wrote Buckley of the desire to dispose of all or a very substantial part of this stock. Not having a reply, Rowley again wrote Buckley under date of October 10, 1939. On October 12, 1939, Buckley, in a reply to Rowley's letter of October 2, 1939, stated: "We are quite conscious of the problem involved and unfortunately it applies to the present officers of the Company also and there is no possibility of disposing of any of the Preference Stock in that direction." Not being satisfied with Buckley's reply, Rowley under date of October 20, 1939, wrote Buckley as follows: "On Mrs. Davis' behalf I would like to obtain a copy of the most recent balance sheet and income account of the company. It may become necessary on her behalf to examine the corporate records of the company to the extent that the law makes such records available to stockholders." Rowley desired this information because he did not think the company would want to furnish it and it would cause them to reconsider whether they would buy the stock, and because if he offered the stock on the open market he wanted the information *218 as a basis of statements to make to prospective purchasers. Soon after receipt of this letter Buckley called Rowley by long distance telephone and suggested a conference in Philadelphia with the advantage of a personal discussion. A conference was held on November 3, 1939, and Buckley furnished Rowley with sufficient figures to satisfy him as to the condition and prospects of the company. Rowley decided that he would not make further efforts to dispose of the stock until after the first of the year and would not take the question up again with Buckley until possibly sometime in the spring. Rowley did not at that time hear of any plan regarding the conversion or substitution of any common stock for old common stock or new common stock for $5 preference stock or receive any information as to what the company intended to do. Buckley, on behalf of the corporation, himself, or the directors had no intention in November, 1939, of purchasing any of this stock. He did want to have another opportunity to purchase the stock before it was offered for sale to an outsider because the Philco Corporation was an employees' organization and practically all of the stock up to that time had been *219 held by the employees or former employees. Buckley directly or impliedly requested Rowley to communicate with him before offering the stock at private sale. After Rowley's interview with Buckley the officers of the corporation discussed the matter of purchasing the Davis stock, and as the amount of money in the treasury of the corporation after the 1939 financial statements were available, reflected an improved cash position, and prospects for 1940 were good, it was decided that it was better to purchase the Davis stock than have it "kicked around the market" to the company's detriment. It was also thought that if the company bought the stock, whatever earnings the company had would remain with it. Just prior to February 19, 1940, the corporation had roughly $1,000,000 cash and it was concluded that if they could buy preference stock with that amount, they would do so in order to keep the earnings within the company and prevent indiscriminate distribution of financial information. It was thought that it would be unfair to all the stockholders to buy only the Davis stock and that the $1,000,000 in cash could be advantageously used and would settle and dispose of the problem presented *220 by Rowley. On February 19, 1940, the corporation sent the following letter-announcement to the holders holders of its $5 preference stock: ANNOUNCEMENT "The corporation, through its officers, wishes to announce to the holders of its Prior Preference shares that it will purchase FOR ITS TREASURY AND NOT FOR RETIREMENT at par ($100.00 per share) approximately $1,000,000.00 total par value of all the Prior Preference shares of Philco Corporation (formerly Philadelphia Storage Battery Company) offered it by shareholders. For your information there is presently outstanding $3,884,500.00 par value of the Prior Preference Stock. "Should the offers to sell these shares to the corporation exceed approximately $1,000,000.00, the corporation reserves the right to accept the offers in the ratio they bear to the amount it is desired to purchase. "The corporation reserves the right to purchase (a) less than $1,000,000.00 total par value, if less than such amount is offered, or (b) more than $1,000,000.00 total par value, if a greater amount is offered and if, within the discretion of its officers and/or Board of Directors, it is found mete [mate] and proper and to the best interests *221 of the corporation so to do. "This offer to purchase is to take effect immediately, and to expire on March 10, 1940. All purchases will be made as of March 10th after the payment of the regular quarterly dividend which has been declared payable March 8th." In acting upon this offer, Rowley obtained the information that Helen Davis owned 3,616 shares instead of 3,000. The full amount was regarded as tendered. Rowley believed the stock was purchased by the corporation for its treasury, not for retirement, otherwise he would not have sold it since as a lawyer he knew that the tax situation would be different if the stock was to be redeemed or retired. On or about June 2, 1932, Ethel I. Buckley's husband transferred to her by gift 500 shares of $5 preference stock of the Philadelphia Storage Battery Company, a Pennsylvania corporation. She continued to hold this stock as her individual property until sold to the corporation on March 15, 1940, pursuant to the offer to buy made by the announcement of February 19, 1940. On June 2, 1932, Lloyd A. Good received 900 shares of $5 preference stock as a stock dividend on an equal number of shares of common stock. On March 12, 1940, he *222 sold 600 of his 900 shares of $5 preference stock to the corporation for $60,000 pursuant to the offer to buy made by the announcement of February 19, 1940. On May 1, 1940, after the expiration date of the offer of February 19, 1940, he sold the remaining 300 shares for $30,000, pursuant to the offer to buy made by the announcement of February 19, 1940. More than two years prior to March 13, 1940, Mary P. McDaniel acquired 80 shares of the $5 preference stock. On March 13, 1940, she sold her 80 shares of $5 preference stock to the corporation for $8,000 pursuant to the offer to buy made by the announcement of February 19, 1940. On or about June 2, 1932, Ernest B. Loveman received 96 shares of the $5 preference stock as a stock dividend, which he continued to hold as his individual property until sold to the corporation on March 29, 1940, pursuant to the offer to buy made in the announcement of February 19, 1940. More than two years prior to March 14, 1940, John S. Thomas, Jr., acquired 500 shares of the $5 preference stock. On March 14, 1940, he sold his 500 shares to the corporation for the sum of $50,000 pursuant to the offer to buy made by the announcement of February 19, 1940. *223 More than two years prior to March 12, 1940, Ethel S. Carpenter acquired 72 shares of the $5 preference stock. She continued to hold this stock until sold to the corporation on March 12, 1940, for the sum of $7,200 pursuant to the offer to buy made by the announcement dated February 19, 1940. On June 2, 1932, Jane McLaughlin Timmons received 400 shares of $5 preference stock of the corporation as a stock dividend. On March 13, 1940, she sold her 400 shares to the corporation for the sum of $40,000 pursuant to the offer to buy made by the announcement of February 19, 1940. Documentary transfer stamps in the appropriate amount were placed upon the stubs of all the certificates representing the shares acquired by the corporation from the foregoing petitioners. On March 11, 1940, the treasurer of the corporation reported to the board of directors that on that day 10,460 shares of $5 preference stock had been offered to the corporation and the treasurer was authorized to purchase all of these shares at $100 per share for immediate delivery. On March 29, 1940, a certificate for 10,460 shares of $5 preference stock of the corporation was issued to the corporation to be held as Treasury *224 Stock. It was so carried upon the books of the corporation. This certificate included the shares purchased by the corporation from petitioners in docket numbers 2300, 2301, 2307 (to the extent of 600 shares), 2308, 2314, 2325, 2327, 2938. As of December 31, 1939, of the 40,000 authorized shares of $5 preference stock, 541 shares thereof were unissued, and in addition as of that date the corporation previously had purchased 614 shares from former stockholders, which were held in its treasury. After the acquisition of the 10,460 shares of $5 preference stock there were 28,385 shares of such stock outstanding, and 11,074 shares held in the treasury. In December, 1937, Clare E. Good acquired by gift 50 shares of the $5 preference stock. In December, 1928, she likewise acquired an additional 50 shares. She continued to hold this stock as her individual property until May 1, 1940, when she sold it to the corporation pursuant to the offer to buy made in the announcement of February 19, 1940. On March 21, 1938, Jean S. Heinritz bought 100 shares of $5 preference stock for $5,000. On July 11, 1940, she sold her 100 shares to the corporation for $10,000 pursuant to the offer to buy made *225 by the announcement of February 19, 1940. On December 31, 1937, The Pennsylvania Company for Insurance on Lives nad Granting Annuities, as trustee for the Lloyd A. Good, Jr., Trust, received 100 shares of $5 preference stock. On May 1, 1940, it sold the 100 shares to the corporation for the sum of $10,000 pursuant to the offer to buy made by the announcement of February 19, 1940. It was felt by the officers of the corporation that a pooling agreement and restriction as to sales relating to the common stock created a difficult situation for the individual holders of this stock. The problem was recognized as an individual problem rather than a corporate one. There was no market for the common stock which was considered to have a book or actual value of between $375 and $500 per share. It was felt that if any of the owners of the stock should die, an estate problem might arise. A representative of the Treasury Department had brought up the possibility in connection with a similar situation in an estate tax case of a former employee. The corporation had the option to buy back this common stock at $110 a share, but it was not required to buy it back. In the latter part of 1938, after *226 a decision by the Supreme Court of Delaware, in favor of the corporation in litigation with the Radio Corporation of America, it appeared that a revised licensing agreement would follow with R.C.A. and the existence of two corporations - a manufacturing company (Philadelphia Storage Battery Company) and a sales company (Philco Radio and Television Corporation) - would be unnecessary. At that time the directors began the discussion of creating a market for the common stock to eliminate the undesirable situation created under the terms of sale and the price limitations of the pooling agreement. The matter was further discussed by several of the directors while en route to Florida in January of 1940. This discussion led to the writing of a letter of introduction for its then treasurer, John Ballantyne, to a representative of Smith, Barney & Company named Sayers. On or about January 24, 1940, Ballantyne conferred with Sayers for 20 or 30 minutes on the problem. Some 10 days or two weeks later Smith, Barney & Company's analyst, named Moore, went to the corporation for the purpose of making a survey. He remained there some three weeks but did not discuss with the officers of the corporation *227 the nature of his recommendations or conclusions contained in his report, a copy of which was not furnished to the corporation or its officers. Sometime later a firm of engineers doing business under the name of George A. Armstrong Company was employed by interested bankers to make an independent survey, and a representative of that company went to the corporation for this additional survey which took the remainder of March and part of April to complete. His findings or conclusions were not communicated to the corporation or any of its officers. Sometime late in March, 1940, the corporation employed C. Russell Feldman to represent it in its negotiations with Smith, Barney & Company. After negotiations in April, 1940, between Feldman and representatives of Smith, Barney & Company, a report was submitted to the corporation for reclassifying its common stock according to a number of different plans, one or more of which provided for the retaining of approximately $3,000,000 worth of preference stock. Just prior to April 12, 1940, the directors of the corporation decided that the particular plan submitted by Smith, Barney & Company which contemplated the "repurchase" of the remaining *228 preference stock was the most feasible, and on April 12, 1940, Ballantyne as treasurer so reported to its directors. On April 12, 1940, the board of directors duly passed the following resolution: "Mr. Ballantyne stated that in the opinion of the bankers, Smith, Barney & Co., it was in the best interests of the corporation that the corporation should join with the stockholders in marketing sufficient shares of the new $3.00 par value common stock to allow the corporation to repurchase the outstanding Five Dollar Preference Stock of this corporation. Therefore, it was moved that the Treasurer be authorized to sell sufficient common stock, having a par value of $3.00 per share, at the established market price in order to repurchase the outstanding preference stock. Upon motion duly seconded, this resolution was approved." On April 12, 1940, the board of directors of the corporation authorized a conversion of 10,000 shares of $5 preference stock to common stock pursuant to section 801 of the Pennsylvania Corporation Law, subject to the approval of the stockholders, which was duly given on April 26, 1940. On April 29, 1940, these 10,000 shares of $5 preference stock were converted *229 into 333,333 1/3 shares of $3 par value common stock of the corporation. Under a Plan of Recapitalization and by appropriate action of the board of directors on May 14, 1940, and pursuant to authorization of the stockholders at a meeting of April 26, 1940, the $100 par value common stock of Philco was converted into new $3 par value common stock and was exchanged on the basis of 33 1/3 shares of new common stock for each share of the old common stock. As a result, the then authorized common stock of $100 par value, consisting of 40,000 shares, was increased to 1,333,333 1/3 shares of new $3 par value common stock. Of this amount there were 7,800 shares unissued, 1,221,100 shares outstanding, and 104,433 1/3 shares held in the treasury and carried on the books of the corporation as treasury stock. The 333,333 1/3 shares of new $3 par value common stock resulting from the conversion of 10,000 shares of $5 preference stock (out of the 11,074 shares which had been held in the treasury as treasury stock) continued to be held in the treasury as treasury stock. 5,000 shares of authorized first preferred stock then held in the treasury as treasury stock were converted into 166,666 2/3 shares *230 of new $3 par value common stock and held in the treasury and carried on the books of the corporation as treasury stock. 5,000 shares of second preferred stock then held in the treasury and carried on the books of the corporation as treasury stock were converted into 166,666 2/3 shares of new $3 par value common stock and held in the treasury and carried on the books of the corporation as treasury stock. As of May 14, 1940, after recapitalization, the authorized capital stock consisted of 30,000 shares of $5 preference stock and 2,000,000 shares of $3 par value common stock. There were then unissued 541 shares of $5 preference stock and 7,800 shares of the new common stock. There were outstanding 28,385 shares of $5 preference stock and 1,221,100 shares of the new common stock and there remained in the treasury 1,074 shares of $5 preference stock and 771,100 shares of the new common stock. A registration statement was filed by Philco Corporation with the Securities and Exchange Commission under date of May 23, 1940, and was subsequently amended on the following dates: June 4, 1940, June 18, 1940, June 27, 1940, and July 8, 1940. The registration statement as amended provided for *231 the sale of 325,000 shares of $3 par common stock, of which 175,000 shares were to be sold by certain Philco stockholders who offered their old common stock to the underwriters at a stated price. The balance of 150,000 shares came from the $3 common treasury stock held by the Philco Corporation, for which the corporation was to receive $1,987,500. The registration statement was approved on July 10, 1940, as of July 7, 1940. On July 9, 1940, an agreement was formally entered into by Philco Corporation and selling stockholders with Smith, Barney & Co. of Philadelphia, acting on behalf of that company and other underwriters, to market 150,000 shares of common stock, par value $3 per share, the proceeds to be used in the redemption, retirement, and cancellation of the remaining $5 preference stock. The offer to the public of these shares was to be at $15 per share, from which were to be deducted certain expenses and discounts to brokers for other services. The Philco Corporation then prepared and had approved by the Securities and Exchange Commission a prospectus dated as of July 11, 1940, in which it was stated that after the redemption and cancellation of all $5 preference stock *232 the only authorized capital stock of the company would consist of 2,000,000 shares of common stock $3 par value of which 1,371,100 shares would be outstanding, exclusive of shares held in the treasury of the company after giving effect to the sale of common stock to which the prospectus related. On October 24, 1940, the Philco Corporation made application to the Securities and Exchange Commission to list its stock on the New York Stock Exchange and the Philadelphia Stock Exchange. Upon approval the common stock was listed and sold on these Exchanges. On December 28, 1940, Philco Corporation exchanged 16,667 shares of its new common stock held in its treasury, share for share, for 16,667 shares of Simplex Radio Company, a subsidiary. On the same date Simplex Radio Company was liquidated and 15,574 of the outstanding new shares were returned to the treasury of Philco Corporation and 50 shares of the new common stock representing the fractional interests were purchased from Simplex Radio Company and held as treasury stock by Philco Corporation. As of December 31, 1940, there were 2,000,000 shares of the new common stock authorized, 7,800 shares of the new common stock unissued, *233 1,372,143 shares of the new common stock outstanding, and 620,057 shares of the new common stock were held in the treasury. As of December 31, 1940, all other shares authorized and outstanding as of December 31, 1939, had been converted into new common stock in accordance with the recapitalization of May 14, 1940, or retired in accordance with a resolution of the board of directors dated July 15, 1940. After the above transactions the stockholders who controlled the old corporation were not in control of the affairs of the recapitalized corporation. Recapitalization effected on May 14, 1940, as authorized by a directors' meeting on April 12, 1940, and a stockholders meeting on April 26, 1940, as well as the subsequent action on the part of the corporation with regard to securing authorization of reclassification and registration of its stock was consummated pursuant to section 801 et seq. of the Pennsylvania Business Corporation Law. The plan first discussed between Feldman and the representative of Smith, Barney & Company contemplated the sale of the new $3 par value common stock when created at $20 or $21 per share. However, due to the depressed condition of the stock market *234 resulting from the European war situation, negotiations were not only interrupted but were completely discontinued by the underwriters. The officers of the corporation were doubtful whether sufficient stock could be secured to supply the 325,000 shares of new common stock required for registration. Petitioners all reported gain on the transactions as long-term capital gains and respondent has determined that the gains should be treated as short-term capital gains under Internal Revenue Code, section 115 (c) and (i). There is no dispute as to the basis to be used by the respective petitioners in computing their gains. The acquisition of the $5 preference shares (prior to July 9, 1940) was with the corporate intent to treat them as treasury shares and not for redemption or cancellation. The acquisition of the $5 preference shares after July 9, 1940, was with the corporate intent to redeem and cancel them. Opinion In discussing the sole issue as to all petitioners and deciding the narrow question whether in each case their stock was disposed of by sale to the corporation resulting in long-term capital gain, or was the subject of a partial liquidation, *235 [1] the various situations presented must be considered in three different groups. As to the first series of transactions, all of which were completed within the time limit set by the company's offer to purchase "for its treasury and not for retirement," there seems to be little justification for any assumption that there was nevertheless a secret purpose to cancel and redeem. As to these petitioners we have consequently found as a fact that the disposition of the stock was exactly as it purported to be, and that as to these petitioners the transactions were sales and not dividends in partial *236 liquidation. A comparatively small number of shares - 500 to be exact - were transferred to the company on May 1, 1940, [2] subsequent to the nominal expiration date of the prior offer. In the meantime, also, the company had authorized a recapitalization calling for the "repurchase" of all of the outstanding preference stock and the conversion into common of a part of it. The conclusion that the company still intended to hold this specific block in its treasury and not to retire it as of the date of acquisition would be seriously debatable were it not for the stipulated fact as to each of these petitioners that "petitioner sold" the shares in question to the corporation "pursuant to the offer to buy made by" the original offer. Since that offer was in terms stated to be for the company's treasury and not for retirement, and since there appears no unequivocal evidence of a contrary intention up to the date of transfer, the finding appears to be warranted that as to these petitioners also the transactions between them and the company were sales and not distributions in partial liquidation. Harold F. Hadley, 1 T.C. 496. *237 With respect, however, to the 100 shares transferred by petitioner Jean S. Heinritz, there is no escape from the conclusion that the proceeds received for the stock were "in complete cancellation or redemption" [3] as called for by Internal Revenue Code, section 115(i). It is stipulated that the date of this transfer was July 11, 1940. Two days earlier, on July 9th, "an agreement was formally entered into between Philco Corporation and selling stockholders * * * to market 150,000 shares of common stock, par value $3.00 per share, the proceeds to be used in the redemption, retirement, and cancellation of the remaining $5.00 preference stock." On that date the shares in question belonging to this petitioner were a part of that remaining stock. It does not seem to us possible to reach any other conclusion but that the acquisition two days later was in pursuance of the intention manifested by the July 9 contract to redeem, retire, and cancel the preference stock. *238 The case of Alpers v. Commissioner, 126 Fed. (2d) 58, is heavily relied on by the petitioners. There the Circuit Court of Appeals, Second Circuit, said: * * * the Board and the courts have made a distinction between acquisition by a corporation of its own stock for the purpose of retiring it that is, for "complete cancellation or redemption," and acquisition for the purpose of holding it as "treasury stock" until reissued. Acquisitions of the first type are within section 115 (c). * * * * * * the character of the transaction must be judged by what occurred when the petitioner surrendered his certificate in exchange for payment. * * * By July 11 it no longer remains possible to doubt that the corporate purpose was the complete cancellation and redemption of all the preference shares outstanding on July 9. The shares transferred by petitioner Heinritz being in that class, it follows that the payment received in exchange for them constitutes a distribution in partial liquidation and was taxable as such. If it is necessary in order to reach this result to disregard the terms of the contract between that petitioner and the corporation, the tax consequence of the undisputed *239 record as to corporate intent cannot for that reason be altered. Amelia H. Cohen Trust v. Commissioner (C.C.A., 3rd Cir.) 121 Fed. (2d) 689. Whether a subsequent failure to cancel and retire the stock would alter this conclusion and whether or not the substitution of a different class of stock for the shares surrendered constitutes such cancellation or redemption are questions which need not be considered on this record. There is no evidence whatever of a failure to complete the process of retirement of the shares transferred by this petitioner. Some reference is made to the conversion of certain of the preference shares into common, but that is confined to the so-called recapitalization with respect to which it is stipulated: "As of May 14, 1940, after recapitalization, the authorized capital stock consisted of 30,000 shares of $5.00 preference stock * * *. There was outstanding 28,385 shares of $5.00 preference stock * * *," among which, of course, was that held by petitioner Heinritz. This appears to be the interpretation placed upon the facts in petitioners' brief which recites that: "The recapitalization was effected on May 14, 1940, but this did not include *240 the conversion of the then outstanding shares of $5.00 preference stock * * *." And when, for example, the brief asserts that "The $5.00 Preference Stock sold by the Petitioners to the Philco Corporation continued to be held as Treasury Stock, and after it was converted into new $3.00 par value Common Stock on May 14, 1940, it was likewise held as Treasury Stock * * *," it seems evident that it could not have reference to the shares which on that date still remained in the hands of petitioner Heinritz. The final paragraph of the stipulation recites that: "As of December 31, 1940, all other shares authorized and outstanding as of December 31, 1939, had been converted into new common stock in accordance with the recapitalization of May 14, 1940, or retired in accordance with the resolution of the Board of Directors dated July 15, 1940." Since there is no evidence that this stock was converted in accordance with the recapitalization of May 14, and in fact it seems evident that no such conversion could have taken place, the necessary conclusion is that it actually was retired. As to the proceeding in which Jean S. Heinritz is petitioner, the respondent must accordingly prevail. In *241 Docket No. 2326 decision will be entered for the respondent. In Docket Nos. 2308, 2314, 2327, and 2938 decisions will be entered for the petitioners. In Docket Nos. 2300, 2301, 2306, 2307, 2325, and 2334 decisions will be entered under Rule 50. Footnotes
1. Internal Revenue Code. "SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
"(c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * * Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. * * *"↩
2. Typical of numerous inconsistencies and omissions in the stipulated facts, the stipulation in the case of petitioner Clare E. Good shows the date as May 15th, but the master stipulation, paragraph 48, carries it as May 1st.↩
3. "(i) Definition of Partial Liquidation. - As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."↩